IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Cr. No. 20-CR-1901 MV |
| ) | 20-CR-1900 MV |
| **MITZI BROOKS**, ) | 20-CR-1898 MV |
| ) | 20-CR-1897 MV |
| Defendant. ) | |

## PLEA AGREEMENT

Pursuant to Rule 11, Fed. R. Crim. P., the parties notify the Court of the following agreement between the United States Attorney for the District of New Mexico, the Defendant, MITZI BROOKS, and the Defendant's counsel, G. Barry Porter:

### REPRESENTATION BY COUNSEL

1. The Defendant understands the Defendant's right to be represented by an attorney and is so represented. The Defendant has thoroughly reviewed all aspects of this case with the Defendant's attorney and is fully satisfied with that attorney's legal representation.

### RIGHTS OF THE DEFENDANT

2. The Defendant further understands the Defendant's rights:

    a. to plead not guilty, or having already so pleaded, to persist in that plea;

    b. to have a trial by jury; and

    c. at a trial:

        i. to confront and cross-examine adverse witnesses,

      ii.      to be protected from compelled self-incrimination,

      iii.      to testify and present evidence on the Defendant's own behalf, and

      iv.      to compel the attendance of witnesses for the defense.

## WAIVER OF RIGHTS AND PLEA OF GUILTY

3.      The Defendant agrees to waive these rights and to plead guilty to:

    a.    count 1 of indictment 19-CR-1901, charging a violation of 21 U.S.C. § 846, that being Conspiracy to Distribution of 50 Grams and More of a Mixture and Substance Containing Methamphetamine; 21 U.S.C. §§ 841(a)(1) and (b)(1)(B).

    b.    count 2 of indictment in 20-CR-1900, charging a violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C):  Distribution of a Mixture and Substance Containing Methamphetamine; 18 U.S.C. § 2:  Aiding and Abetting;

    c.    the sole count of indictment in 20-CR-1898, charging a violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B):  Distribution of 50 Grams and More of a Mixture and Substance Containing Methamphetamine; 18 U.S.C. § 2:  Aiding and Abetting;

    d.    the sole count of indictment 20-CR-1897, charging a violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C):  Distribution of a Mixture and Substance Containing Methamphetamine; 18 U.S.C. § 2:  Aiding and Abetting.

## SENTENCING

4.      The Defendant understands that the minimum and maximum penalty provided by law, for the offense in count 1 of indictment 19-CR-1901, and sole count of 19-CR-1898 are:

    a.    imprisonment for a period of not less than 5 years and not more than 40 years;

      b.      a fine not to exceed $5,000,000;

      c.      a term of supervised release of not less than 4 years and up to life to follow any term of imprisonment.  (If the Defendant serves a term of imprisonment, is then released on supervised release, and violates the conditions of supervised release, the Defendant's supervised release could be revoked — even on the last day of the term — and the Defendant could then be returned to another period of incarceration and a new term of supervised release.); and

      d.      a mandatory special penalty assessment of $100.00.

5.      The Defendant understands that the minimum and maximum penalty provided by law for these offenses as to count 2 of 20-CR-1900 and the sole count of indictment 20-CR-1897 are:

      a.      imprisonment for a period of not more than 20 years;

      b.      a fine not to exceed the greater of $1,000,000;

      c.      a term of supervised release of not less than 3 years and up to life to follow any term of imprisonment.  (If the Defendant serves a term of imprisonment, is then released on supervised release, and violates the conditions of supervised release, the Defendant's supervised release could be revoked — even on the last day of the term — and the Defendant could then be returned to another period of incarceration and a new term of supervised release.); and

      d.      a mandatory special penalty assessment of $100.00.

6.      The Defendant ==may be eligible for the "safety valve"== provisions set forth at 18 U.S.C. § 3553(f)(1)-(5), as amended by Section 402 of the First Step Act, Pub. L. 115-391, effective December 21, 2018.  The parties further recognize that the safety valve provisions of

USSG §§ 2D1.1(b)(18) and 5C1.2 have not yet been amended to comport with the changes applied by the First Step Act to 18 U.S.C. § 3553(f). If the Defendant establishes eligibility for each of the elements in § 3553(f)(1)-(5) and USSG § 5C1.2, the Defendant would be entitled pursuant to USSG § 2D1.1(b)(18) to a reduction of two levels from the base offense level as calculated under the sentencing guidelines, and the sentence imposed could be less than any statutory minimum sentence that would otherwise apply. If the Defendant establishes eligibility for each of the elements in § 3553(f)(1)-(5) as amended by the First Step Act but does not qualify under USSG § 5C1.2, the United States agrees that the Defendant may receive a two-level reduction in the Sentencing Guidelines offense level as a variance and the sentence imposed could be less than any statutory minimum sentence that would otherwise apply. The Defendant agrees, in exchange for the United States' recommendation of this two-level downward variance, that the Defendant will not seek a further reduced sentence pursuant to 18 U.S.C. § 3582(c)(2) in the event the Court grants the two-level variance and the Sentencing Commission amends § 5C1.2 to reflect the safety valve provisions in the First Step Act.

7. The parties recognize that the federal sentencing guidelines are advisory, and that the Court is required to consider them in determining the sentence it imposes.

## ELEMENTS OF THE OFFENSE

8. If this matter proceeded to trial, the Defendant understands that the United States would be required to prove, beyond a reasonable doubt, the following elements for violations of the charges listed below:

    a    **count 1 of indictment 19-CR-1901,** charging a violation of 21 U.S.C. § 846, that being Conspiracy to Distribution of 50 Grams and More of a Mixture and Substance Containing Methamphetamine; 21 U.S.C. §§ 841(a)(1) and (b)(1)(B):

*First*:		two or more persons agreed to violate the federal drug laws;

*Second*:		the defendant knew the essential objective of the conspiracy;

*Third*:		the defendant knowingly and voluntarily involved herself in the conspiracy;

*Fourth*:		there was interdependence among the members of the conspiracy; and

*Fifth*:		the overall scope of the conspiracy involved at least 50 grams of methamphetamine

  b. **count 2 of indictment 19-CR-1900 and the sole count of indictment 20-CR-1897,** charging a violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), that being Distribution of a Mixture and Substance Containing Methamphetamine; 18 U.S.C. § 2: Aiding and Abetting.

*First*:		the defendant knowingly or intentionally distributed a controlled substance as charged;

*Second*:		the substance was in fact methamphetamine;

  c. **sole count of indictment 19-CR-1898**, charging a violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B), that being Distribution of 50 Grams and More of a Mixture and Substance Containing Methamphetamine; 18 U.S.C. § 2: Aiding and Abetting.

*First*:		the defendant knowingly or intentionally distributed a controlled substance as charged;

*Second*:		the substance was in fact methamphetamine; and

*Third*:		the amount of the controlled substance was at least 50 grams.

**DEFENDANT'S ADMISSION OF FACTS**

9. By my signature on this plea agreement, I am acknowledging that I am pleading guilty because I am, in fact, guilty of the offense(s) to which I am pleading guilty.  I recognize

and accept responsibility for my criminal conduct. Moreover, in pleading guilty, I acknowledge that if I chose to go to trial instead of entering this plea, the United States could prove facts sufficient to establish my guilt of the offense(s) to which I am pleading guilty beyond a reasonable doubt, including any facts alleged in the indictments that increase the statutory minimum or maximum penalties. I specifically admit the following facts related to the charges against me, and declare under penalty of perjury that all of these facts are true and correct:

**From August 18, 2020 through September 8, 2020, I assisted and set up meetings for the distribution of methamphetamine as outlined below. The transactions involved a Confidential Informant ("CI") 489, and a Special Agent ("SA"), with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"). At the time of the transactions, I did not know that the CI or the SA were working for law enforcement.**

**20-CR-1901**

**Beginning on September 7, 2020 and continuing through September 8, 2020, in the District of New Mexico, I unlawfully, knowingly, and intentionally conspired with Paul Raymond Gutierrez, and persons known and unknown to me, to distribute a controlled substance, methamphetamine. Specifically, between September 7, 2020 through September 8, 2020, I communicated with a person, now identified as CI 489, by phone for the purpose of arranging the sale of 4 ounces of methamphetamine on September 8, 2020.**

**On September 8, 2020, I arranged for the undercover ATF CI 489 and SA 6313 to meet me at my residence. I arranged for Paul Raymond Gutierrez, a.k.a "Loyalty," to meet me at my residence for purposes of distributing methamphetamine. Gutierrez arrived at my home and got into the undercover vehicle with the undercover SA and CI. I moved from the undercover vehicle to the passenger seat of the vehicle Gutierrez arrived**

in. Gutierrez's driver and I followed the undercover SA, CI, and Gutierrez to the intersection of La Vita Dr. NE and Marble Ave NE, Albuquerque, NM. At that location, outside of my presence, Paul Gutierrez provided the SA and CI with two baggies containing methamphetamine. Gutierrez was paid $1,900 for the methamphetamine. I admit that I had arranged the deal. I have since learned and admit that the two baggies weighed 55 gross grams and 57 gross grams, for a total of 114 gross grams, and field tested presumptively positive for methamphetamine. The undercover SA paid me $150.00 for arranging the deal.

**20-CR-1900**

On August 25, 2020, in the District of New Mexico, I unlawfully, knowingly, and intentionally distributed approximately two (2) ounces of a mixture and substance containing methamphetamine on August 25, 2020 to undercover ATF SA 6313 and CI 489. I arranged for the SA and CI to meet me at the Lotaburger on Lomas Boulevard and follow me to the Bow and Arrow Lodge, 8300 Central Ave SE, Room #15, Albuquerque, New Mexico. Linda Allen was staying in Room #15 and agreed to allow the drug transaction to take place in her rented room.

The SA & CI followed me to that location, and I introduced them to Linda Allen. Allen said that her source would be arriving soon. Shortly thereafter, Kendell Morrell, aka "Keymo," arrived with the methamphetamine. The SA paid Morrell $500 in cash and Morrell accepted the money.

The SA, CI, and I then left. The SA paid me $60.00 for setting up the meeting for the deal. The SA paid ALLEN $40 for providing a room for the deal. I have since learned and admit that the methamphetamine weighed approximately 28.89 gross grams

7

and field-tested presumptively positive for methamphetamine.

### 20-CR-1897

On August 20, 2020, in the District of New Mexico, I unlawfully, knowingly, and intentionally aided in the distribution of a controlled substance, approximately 28 gross grams of a mixture and substance containing a detectable amount of methamphetamine to an undercover ATF SA 6313 and CI 489.

Between August 18, 2020 and August 20, 2020, I engaged in text message and cell phone communication with CI-489 and SA 6313, to arrange the sale of two (2) ounces of methamphetamine for $950.   On August 20, 2020, I was with Collette Andrea Wise when the undercover CI and SA called me for help with the purchase of methamphetamine. Collette Andrea Wise, told me that she could do the drug transaction.   The sale occurred in the Wendy's parking lot located at 4800 Menaul Blvd NE., Albuquerque, NM.   The undercover agent paid Wise $960 for the methamphetamine and paid me $40 for setting up the meeting for the deal.   I have since learned and admit that the methamphetamine weighed approximately 57.74 gross grams and field tested presumptively positive for methamphetamine.

### 20-CR-1898

On September 1, 2020, in Bernalillo County, in the District of New Mexico, I unlawfully, knowingly and intentionally distributed a controlled substance, approximately 57.7 gross grams of a mixture and substance containing a detectable amount of methamphetamine to ATF SA 6313 and CI 489.   I pre-arranged the transaction.   I met the SA and CI at my residence.   William Wilson arrived at my residence and I got into his vehicle and drove with him to his home.   There, Wilson provided the methamphetamine to

**me and I handed the drugs to CI 489 and SA 6313.   SA 6313 gave me $960 for the methamphetamine.   I handed Wilson the money and then the SA and the CI paid me $60 for setting up the meeting for the drug deal.   I have since learned and admit that the methamphetamine weighed approximately 57.7 gross grams and field-tested presumptively positive for methamphetamine.**

10.   By signing this agreement, the Defendant admits that there is a factual basis for each element of the crime(s) to which the Defendant is pleading guilty.   The Defendant agrees that the Court may rely on any of these facts, as well as facts in the presentence report, to determine the Defendant's sentence, including, but not limited to, the advisory guideline offense level.

## RECOMMENDATIONS

11.   Pursuant to Rule 11(c)(1)(B), the United States and the Defendant recommend as follows:

    a.   At least 50 grams but less than 500 grams of a mixture and substance containing methamphetamine are attributable to the Defendant.   Accordingly, the parties agree that the Defendant's base offense level under the sentencing guidelines is 26, pursuant to USSG § 2D1.1(c)(7).

    b.   Based on the best information available to the United States as of the date the Defendant accepted this plea agreement, the United States estimates that at least 289 grams are attributable to the Defendant.   Accordingly, the United States and the Defendant recommend that the Defendant's base offense level under the sentencing guidelines is 26, pursuant to USSG § 2D1.1(c)(7).

c. The parties recommend pursuant to Fed. R. Crim. P. 11(c)(1)(B) that the defendant receive a role reduction of 2 levels from the base offense level, as a minor participant in the offense of conviction, under USSG § 3B1.2.   The United States is free to withdraw this recommendation if the Defendant has previously engaged in any conduct now unknown to the United States Attorney's Office for the District of New Mexico that would be inconsistent with the Defendant's claim to have been a minor participant.

d. As of the date of this agreement, the Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for the Defendant's criminal conduct.   Consequently, pursuant to USSG § 3E1.1(a), so long as the Defendant continues to accept responsibility for the Defendant's criminal conduct, the Defendant is entitled to a reduction of two levels from the base offense level as calculated under the sentencing guidelines, and if applicable, a reduction of an additional offense level pursuant to USSG § 3E1.1(b).   Further, the United States is free to withdraw this recommendation if the Defendant engages in any conduct that is inconsistent with acceptance of responsibility between the date of this agreement and the sentencing hearing.   Such conduct would include committing additional crimes, failing to appear in Court as required, and/or failing to obey any conditions of release that the Court may set.

e. The Defendant understands that the above recommendations are not binding on the Court and that whether the Court accepts these recommendations is a matter solely within the discretion of the Court after it has reviewed the

presentence report. Further, the Defendant understands that the Court may choose to vary from the advisory guideline sentence. If the Court does not accept any one or more of the above recommendations and reaches an advisory guideline sentence different than expected by the Defendant, or if the Court varies from the advisory guideline range, the Defendant will not seek to withdraw the Defendant's plea of guilty. In other words, regardless of any of the parties' recommendations, the Defendant's final sentence is solely within the discretion of the Court.

12. Apart from the recommendations set forth in this plea agreement, the United States and the Defendant reserve their rights to assert any position or argument with respect to the sentence to be imposed, including but not limited to the applicability of particular sentencing guidelines, adjustments under the guidelines, departures or variances from the guidelines, and the application of factors in 18 U.S.C. § 3553(a).

13. Regardless of any other provision in this agreement, the United States reserves the right to provide to the United States Pretrial Services and Probation Office and to the Court any information the United States believes may be helpful to the Court, including but not limited to information about the recommendations contained in this agreement and any relevant conduct under USSG § 1B1.3.

## **DEFENDANT'S ADDITIONAL AGREEMENT**

14. The Defendant understands the Defendant's obligation to provide the United States Pretrial Services and Probation Office with truthful, accurate, and complete information. The Defendant represents that the Defendant has complied with and will continue to comply with this obligation.

15.     The Defendant agrees that, upon the Defendant's signing of this plea agreement, the facts that the Defendant has admitted under this plea agreement as set forth above, as well as any facts to which the Defendant admits in open court at the Defendant's plea hearing, shall be admissible against the Defendant under Federal Rule of Evidence 801(d)(2)(A) in any subsequent proceeding, including a criminal trial, and the Defendant expressly waives the Defendant's rights under Federal Rule of Criminal Procedure 11(f) and Federal Rule of Evidence 410 with regard to the facts the Defendant admits in conjunction with this plea agreement.

16.     By signing this plea agreement, the defendant waives the right to withdraw the defendant's plea of guilty pursuant to Federal Rule of Criminal Procedure 11(d) unless (1) the court rejects the plea agreement pursuant to Federal Rule of Criminal Procedure 11(c)(5) or (2) the defendant can show a fair and just reason as those terms are used in Rule 11(d)(2)(B) for requesting the withdrawal.  Furthermore, defendant understands that if the court rejects the plea agreement, whether or not defendant withdraws the guilty plea, the United States is relieved of any obligation it had under the agreement and defendant shall be subject to prosecution for any federal, state, or local crime(s) which this agreement otherwise anticipated would be dismissed or not prosecuted.

17.     The Defendant recognizes that this plea agreement has already conferred a benefit on the Defendant.  Consequently, in return for the benefit conferred on the Defendant by entering into this agreement, the Defendant agrees not to seek a downward departure or variance from the applicable sentencing guideline range as determined by the Court after the Court resolves any objections by either party to the presentence report.  In other words, the Defendant agrees that a sentence within the applicable guideline range is a reasonable sentence.  If the Defendant, in violation of this paragraph, should nevertheless seek a downward departure or

variance, including a departure or variance from the guideline Criminal History Category, the United States shall have the right to treat this plea agreement as null and void and to proceed to trial on all charges before the Court.

## **FORFEITURE**

18.     The Defendant states that she has no possessory interest or rights to any of the property seized by the government in his case, and further agrees to forfeit, and hereby forfeits, whatever interest the Defendant may have in any asset derived from or used in the commission of the offense(s) in this case.  The Defendant agrees to cooperate fully in helping the United States (a) to locate and identify any such assets and (b) to the extent possible, to obtain possession and/or ownership of all or part of any such assets.  The Defendant further agrees to cooperate fully in helping the United States locate, identify, and obtain possession and/or ownership of any other assets about which the Defendant may have knowledge that were derived from or used in the commission of offenses committed by other persons.

19.     The Defendant voluntarily and immediately agrees to forfeit to the United States all the Defendant's right, title, and interest in the following assets and properties:

   a. a sum of money equal to at least $ 4,126 in U.S. currency;

   b. an SCCY, model CPX-2, 9mm pistol, bearing serial number 811807;

   c. a Springfield, model XD40, .40 caliber pistol, with laser sight, bearing serial number GM113612;

   d. a Taurus, model PT111 Millennium, 9mm pistol, bearing serial number TIT94802;

   e. various rounds of ammunition and a magazine seized from the premises of 616 Prospect Ave. NW.

20. The Defendant agrees to fully assist the United States in the forfeiture of the above-described property and to take whatever steps are necessary to pass clear title to the United States, including but not limited to execution of any documents necessary to transfer the Defendant's interest in the above-described property to the United States.

21. The Defendant agrees to waive the right to notice of any forfeiture proceeding involving the above-described property.

22. The Defendant knowingly and voluntarily waives the right to a jury trial on the forfeiture of the above-described property.   The Defendant knowingly and voluntarily waives all constitutional, legal, and equitable defenses to the forfeiture of said property in any proceeding. The Defendant agrees to waive any jeopardy defense or claim of double jeopardy, whether constitutional or statutory, and agrees to waive any claim or defense under the Eighth Amendment to the United States Constitution, including any claim of excessive fine, to the forfeiture of said property by the United States or any State or its subdivisions.

**IMMIGRATION REMOVAL AND OTHER IMMIGRATION CONSEQUENCES**

23. The Defendant recognizes that pleading guilty may have consequences with respect to the Defendant's immigration status if the Defendant is not a citizen of the United States.   Under federal law, a broad range of crimes are removable offenses, including the offense(s) to which the Defendant is pleading guilty.   Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including the Defendant's attorney or the district court, can predict to a certainty the effect of the Defendant's conviction on the Defendant's immigration status.   The Defendant nevertheless affirms that the Defendant wants to plead guilty regardless of any immigration

consequences that the Defendant's plea may entail, even if the consequence is the Defendant's automatic removal from the United States.

## WAIVER OF APPEAL RIGHTS

24.     The Defendant is aware that 28 U.S.C. § 1291 and 18 U.S.C. § 3742 afford a defendant the right to appeal a conviction and the sentence imposed.   Acknowledging that, the Defendant knowingly waives the right to appeal the Defendant's conviction(s) and any sentence, including any fine, at or under the maximum statutory penalty authorized by law, as well as any sentence imposed below or within the Guideline range upon a revocation of supervised release in this cause number.   The Defendant also waives the right to appeal the denial of any motion filed under 18 U.S.C. §  3582(c)(1)(A).   The Defendant also waives the right to appeal the denial of any motion filed under 18 U.S.C. §  3582(c)(1)(A).   In addition, the Defendant agrees to waive any collateral attack to the Defendant's conviction(s) and any sentence, including any fine, pursuant to 28 U.S.C. §§ 2241, 2255, or any other extraordinary writ, except on the issue of defense counsel's ineffective assistance.

## GOVERNMENT'S ADDITIONAL AGREEMENT

25.     Provided that the Defendant fulfills the Defendant's obligations as set out above, the United States agrees that:

    a.     Following sentencing, the United States will move to dismiss count 2 of 20-CR-1901 and count 1 of 20-CR-1900.

    b.     The United States will not bring additional criminal charges against the Defendant arising out of the facts forming the basis of the present indictment.

26.     This agreement is limited to the United States Attorney's Office for the District of New Mexico and does not bind any other federal, state, or local agencies or prosecuting authorities.

## VOLUNTARY PLEA

27.     The Defendant agrees and represents that this plea of guilty is freely and voluntarily made and is not the result of force, threats, or promises (other than the promises set forth in this agreement and any addenda). There have been no promises from anyone as to what sentence the Court will impose. The Defendant also represents that the Defendant is pleading guilty because the Defendant is in fact guilty.

## VIOLATION OF PLEA AGREEMENT

28.     The Defendant agrees that if the Defendant violates any provision of this agreement, the United States may declare this agreement null and void, and the Defendant will thereafter be subject to prosecution for any criminal violation, including but not limited to any crime(s) or offense(s) contained in or related to the charges in this case, as well as perjury, false statement, obstruction of justice, and any other crime committed by the Defendant during this prosecution.

## SPECIAL ASSESSMENT

29.     At the time of sentencing, the Defendant will tender to the United States District Court, District of New Mexico, 333 Lomas Blvd. NW, Suite 270, Albuquerque, New Mexico 87102, a money order or certified check payable to the order of the **United States District Court** in the amount of $ 400 in payment of the special penalty assessment described above.

## ENTIRETY OF AGREEMENT

30. This document and any addenda are a complete statement of the agreement in this case and may not be altered unless done so in writing and signed by all parties. This agreement is effective upon signature by the Defendant and an Assistant United States Attorney.

AGREED TO AND SIGNED this ____ day of March, 2021.

FRED J FEDERICI
Acting United States Attorney

NIKI TAPIA-BRITO
Assistant United States Attorney
Post Office Box 607
Albuquerque, New Mexico 87102
(505) 346-7274

I have carefully discussed every part of this agreement with my client. Further, I have fully advised my client of my client's rights, of possible defenses, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of the relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. In addition, I have explained to my client the elements to each offense to which she/he is pleading guilty. To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one.

G. BARRY PORTER
Attorney for the Defendant

I have carefully discussed every part of this agreement with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. My attorney has advised me of my rights, of possible defenses, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of the relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement.

MITZI BROOKS
Defendant